ROBERT A. ELLIOT, CREEL POOLE, JAMES E. WILSON, SR., JAMES E. WILSON, JR., ROBERT SHELLHAMER AND EMMETT WILSON, Plaintiffs and Appellants, v. SCHOOL DISTRICT NO. 64-JT. OF MUSSELSHELL-ROSEBUD COUNTY et al., Defendants and Respondents.

No. 11221.
Submitted February 9, 1967. Decided April 3, 1967.
425 P.2d 826.

Roy V. Morledge, Jr. (argued), Billings, for appellants.

Forrest H. Anderson, Atty. Gen., Helena, Ross Cannon, Sp. Asst. Atty Gen. (argued), Helena, Thomas M. Ask (argued), Roundup, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment upholding the validity of a school bond election. The appellants are taxpayers who voted in an election which they seek to have declared illegal, null and void. The respondents are two school districts, the three members of the Board of Trustees, and the Clerk of both districts. Both school districts are joint districts with boundaries including land in Musselshell and Rosebud counties, with the proposed school building (the subject of the bond issue election) for both districts to be located at the town of Melstone, in Musselshell County.

School District 64JT is the elementary district and School District 64H-JT the high school district. Both districts have the same boundaries and the same three individuals comprise the Board of Trustees for both districts. The election which is challenged was held on April 2, 1966, for the purpose of authorizing each district to issue bonds for the purpose of building a new school. The buildings would contain separate wings for the elementary and high school, joined by a common gymnasium to be used by all students. Both measures were approved by a vote of 72 yes and 56 no in the High School District and 73 yes and 54 no in the Elementary District.

This suit was commenced before the bonds were sold, and a temporary restraining order was issued to prevent such sale. This order was later modified to permit the sale of the bonds but to prevent delivery pending disposition of the case. The bonds have been sold but are not as yet delivered.

The appellants set forth six specifications of irregularities in the election.

Initially it is argued that the election was null and void for failure of the clerk of the school districts to set out *in full* in the minute books of the Board of Trustees the resolution authorizing the sale of the bonds. Section 75-3910, R.C.M.1947, authorizes the Board of Trustees to pass a resolution calling for a school bond election and set forth certain specifics which the resolution shall contain, such as the amount of the bonds, the rate of interest, and so forth. Section 75-1901, R.C.M.1947, requires a clerk to keep a record of Board of Trustee meetings. This section does not contain any specific language concerning the degree of particularity required of such minute entries made by the Clerk. On April 20, 1966, an entry was made in the minute books of respondent Board of Trustees noting that the school bond resolution was considered and approved. There is no allegation or showing that the resolution itself, on file with the Board of Trustees, was defective or inadequate. Appellants have not presented any Montana or other credible

authority requiring the minute books to reflect the exact contents of the resolution. Nor can we find any abstract or logical basis for the interpretation urged by appellants, and find it is to be without merit.

The second allegation of error—that notice of the sale of bonds was not published in a New York City newspaper pursuant to Section 75-3917, R.C.M.1947—is conceded by appellants upon oral argument to be unsound and does not require further comment.

The third alleged irregularity was the failure to separately state on the ballots the cost of the gymnasium, high school, elementary school, and the necessary land therefor in violation of section 75-3901, R.C.M.1947. That section states in broad terms the purposes for which school bonds may be sold. The real objection of appellants seem to be in the failure to separately state the cost of land involved. Authority cited is Lorang v. High School District "C" of Cascade County, 126 Mont. 204, 247 P.2d 477, a case construing Section 2, Chapter 130, Laws of 1949. Since this statute has been repealed by Chapter 120, Laws of 1953, there is no longer any statutory requirement that a bond issue proposal must include acquisition of the land as well as construction of the school buildings.

Appellants object to the failure of the bond ballots to separately state the purposes for which the funds would be used, or to allocate specifically the amount each district would contribute to joint facilities such as the gymnasium. Since a single school and gymnasium was contemplated by both bond issues, we are hard pressed to believe that the *purpose* of the bond election was not set out with sufficient clarity.

Our attention is next drawn to a series of "irregularities" in the election procedure which are said to have affected the free and intelligent casting of votes, rendering the ascertainment of the result so doubtful as to invalidate the election. These include the manner of distributing absentee ballots, the placing of numbers on some ballots, requesting poll-watchers to leave

the room in which the ballots were being counted, and other less significant charges.

■ We have carefully examined the transcript and find these various matters of dubious consequence. One of the two poll-watchers requested to leave testified that she could have remained had she so chosen. Numbers placed on the ballots by mistake were removed before being given to the voters and there is no indication that this technical departure from legal norms was prejudicial or in fact adversely affected the free choice of any witness.

The fifth allegation of unlawful procedure, which is responsible for a substantial part of the testimony presented, is that the bond ballots required the voter to indicate whether he was "For" or "Against" the measure, rather than "Yes" or "No". The lack of merit in this instance most clearly illustrates the creative determination with which appellants seek to attack the results of the election.

Section 75-3911, R.C.M.1947, sets forth a sample school bond ballot and states in part, "All such ballots shall be *substantially* in the following form: * * *" Emphasis supplied. The statutory sample uses "Yes" and "No," rather than "For" and "Against." If we may concede for purposes of argument only that the ballots in question did use "For" and "Against," it is doubtful in our minds that this would *substantially* deviate from the statutory recommendation. It is comforting to see from the transcript that certain of the complaining witnesses felt that "For" meant "Yes," and "Against" meant "No." The inability to cast an intelligent vote under such circumstances should not be attributed entirely to the form of the ballot.

Whether the use of "For" and "Against" is proper is an issue which actually need not be met, since all the ballots placed in evidence by respondents used "Yes" and "No." An absentee ballot which arrived too late to be counted was opened by the trial judge; it said "Yes" and "No." We feel that the docu-

mentary evidence presented is the best evidence of the form in which the bond issue was presented.

Although the appellants contend that the ballot was worded in such a manner as to be difficult to comprehend, none of appellants' witnesses were able to recall any specific language which was misleading or were able to state in general terms how they were confused. This is astonishing, since appellants state in their brief that "No one other than the dissident taxpayers remembered the terminology of the bond ballots." Having examined the ballots, we find them in substantial conformity to statutory form and sufficiently clear.

The final allegation of error is that the trial court refused to grant appellants' motion to reopen for additional testimony, based upon the affidavit of Robert E. Wilson, the absentee voter whose ballot was opened by the district judge at the trial. Since Mr. Wilson was in Montana at the time of trial and was not called by appellants as a witness, the grounds urged for reopening is that appellants were surprised by the introduction into evidence of Mr. Wilson's absentee ballots. We can readily believe that appellants were surprised, at least with respect to the *contents* of the absentee ballots. They clearly show that the words "Yes" and "No" were used and that the balance of the ballot conformed to those placed in evidence by the respondents. But whether the appellants could reasonably have anticipated that the absentee ballots would be placed in evidence is a matter apart from what those ballots revealed. We feel that the trial judge correctly refused to hear additional testimony. The affidavit of the absentee voter raised only the issue of how his ballot was worded. The actual document, which had never been opened prior to trial, provides conclusive evidence on that issue and further testimony would serve no useful purpose.

Several of appellants' witnesses testified that "rumors" were circulating before the election to the effect that there would be no provision in the ballot to vote *against* the bond issue.

Many voters apparently believed they would not have a fair election prior to the event itself. We have the impression that certain voters had made up their minds as to the legality of the election before it took place. The rather serious inference that the ballot box was "stuffed" runs throughout the transcript, but was not pleaded and not proved. It is evident that appellants are dissatisfied with the results of the election. But this fact alone will not justify an attack on the election procedure which is entirely without substance in fact. The evidence was such that the district judge, who heard the case without a jury, had little choice but to rule for the respondents.

For the foregoing reasons the judgment is affirmed. The case is remanded with instructions to dissolve the temporary restraining order and to permit delivery of the school bonds to the purchaser.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON concur.